

GARY EPPLE,                          §
                                     §
            Plaintiff,               §
                                     §
VS.                                  §    NO. 4:10-CV-303-A
                                     §
BURLINGTON NORTHERN AND              §
SANTA FE RAILWAY, ET AL.,            §
                                     §
            Defendants.              §

<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Now before the court are two motions to dismiss pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by
defendants Brotherhood of Locomotive Engineers and Trainmen
("BLET") and United Transportation Union ("UTU"). Plaintiff,
Gary Epple, filed responses to both motions, and BLET filed a
reply.[1] Having considered all of the parties' filings, as well
as the applicable legal authorities, the court concludes that the
motions to dismiss should be granted.

---

[1]Plaintiff filed a motion to strike BLET's reply on the grounds that it raised for the first time the
argument of plaintiff's failure to exhaust internal union procedures. It appears to the court that BLET
was responding to the exhaustion argument raised in plaintiff's response. Nevertheless, rather than rule
on the motion to strike, the court will give the reply whatever weight and consideration it deserves.

## Plaintiff's Claims and Defendants' Motions

Plaintiff filed the instant action on April 29, 2010, bringing claims against BLET, UTU, and Burlington Northern & Santa Fe Railway ("BNSF"). The complaint sets forth the following factual allegations, which the court accepts as true for purposes of considering the motions to dismiss:

In 1995, the former Burlington Northern Railway ("Burlington Northern") and former Santa Fe Railway ("Santa Fe") merged to form BNSF. Following the merger, the "Train Yard and Engine forces at Alliance/Fort Worth" adopted the labor agreements of the former Santa Fe. Compl. at 4 ¶ 13. Following the merger, union representatives of the former Santa Fe made known that they would "go out of their way to make life difficult" for employees of the former Burlington Northern. Id. at ¶ 15.

Plaintiff is employed by BNSF and is a member of the UTU.[2] Plaintiff worked for Burlington Northern as a locomotive engineer

---

[2]The complaint alleges that BLET represents "locomotive engineers, conductors, . . . and other train service employees on numerous railroads in the United States." Compl. at 3. Although not expressly alleged in the complaint, BLET apparently represented plaintiff when he was employed in the position of engineer.

in Wyoming, and had worked for the company for almost twenty-five years prior to transferring to Fort Worth in 1997.[3]

In September 2004, as part of a "proposed realignment of forces," id. at 5, BNSF served notice of its intent to establish interdivisional service between Alliance/Fort Worth and Temple, Texas. An arbitrated agreement between BNSF and BLET related to the new interdivisional service contained a "protection clause" that afforded affected employees certain protections of the Washington Job Protection Agreement of May 1936, including the promise of six years of benefits. Id. at 17-18.

Through a series of actions and events, plaintiff was assigned to Engineer Pilot Board #20, but was cut from that position on October 24, 2006, and was later displaced from a conductor's position in March 2007. Thus, as a result of the implementation of BNSF's interdivisional service, plaintiff experienced a loss of seniority, deterioration of certain terms and conditions of his employment, and decline in earnings. Plaintiff contends these adverse events would not have happened but for changes implemented by BNSF in 2006.

---

[3] The complaint actually alleges that plaintiff "worked for BNSF for almost 25 years prior to transferring to Fort Worth in 1997." Compl. at 4. As the merger between Burlington Northern and Santa Fe occurred in 1995, it is apparent that plaintiff intended to allege he worked for "Burlington Northern" for twenty-five years as of 1997.

Plaintiff submitted a claim to BNSF on November 7, 2006, for job protection benefits pursuant to the Washington Job Protection Agreement. On April 11, 2007, plaintiff submitted a claim to BNSF for job protection benefits pursuant to applicable provisions of a UTU mediation agreement. The two claims for job protection benefits were denied, and plaintiff filed two separate grievances pertaining to the denial of the two claims.

Plaintiff "was disappointed and mystified at UTU's and BLET's almost immediate hostility to his claims for job protection benefits and attempts to dissuade him from going forward with his grievances." Id. at 7 ¶ 28. The unions gave plaintiff "virtually no assistance" in processing his grievances but instead "colluded with BNSF to deny him the benefits" he sought. Id.

> [] Despite attempts to persuade [plaintiff] to drop his grievances, he continued to pursue them through the grievance process. Without union or legal representation, [plaintiff] worked hard to prepare his written submissions to the National Railway [sic] Adjustment Board ("NRAB" or "the Board").[4]

Id. at 7-8 ¶ 30.

---

[4]The correct name of this entity is the National Railroad Adjustment Board. 45 U.S.C. § 153 First. The court will refer to this entity as "the Board."

On October 17, 2008, the Board notified plaintiff that it had received his submissions on both claims; on May 14, 2009, it notified plaintiff that it was "deadlocked," id. at 8 ¶ 32, and that a hearing was set for July 21, 2009, to consider his claims.[5] Following the hearing, on November 2, 2009, the Board denied both of plaintiff's claims in a written opinion. "[T]he decision seemed to reject [plaintiff's] grievances mostly on the basis that, because the UTU and the BLET had not pursued them, they must be meritless." Id. at 9 ¶ 37.

Plaintiff filed the instant action, alleging that:

> 42. UTU violated its duty of fair representation because its actions were arbitrary and/or in bad faith.

> 43. UTU['s] actions were arbitrary because its representatives exhibited egregious disregard and hostility towards [plaintiff's] claims for job protection benefits, acted irrationally regarding the processing of his grievances, and were biased against him because of his prior employment relationship with Burlington Northern.

> 44. UTU breached its duty of fair representation when its representatives colluded with BNSF to deny job protection benefits to [plaintiff] and other former Burlington Northern employees.

Id. at 10. Plaintiff makes identical allegations against BLET, as well as claims against BNSF for breach of the collective

---

[5] Although the complaint describes problems plaintiff experienced at the hearing, those issues are not germane to resolution of the motions to dismiss and are not included here.

bargaining agreement, and against BLET and BNSF for retaliation.

BLET and UTU filed separate motions to dismiss, both grounded on the contention that plaintiff's claims for breach of the duty of fair representation are barred by limitations.[6]  BLET also argued for dismissal of plaintiff's retaliation claim on the grounds that such a claim is subsumed by plaintiff's claim of breach of the duty of fair representation.  Plaintiff conceded this point in his response.

II.

## Applicable Legal Principles

The standards for deciding a motion to dismiss for failure to state a claim are well-settled.  The court's task is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court said that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

[6] The affirmative defense of limitations "may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

relief."  355 U.S. at 45-46.  However, the Supreme Court has held that it did not quite mean its "no set of facts" statement in Conley.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007) (stating that the Conley "no set of facts" statement "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival," at 563).

In evaluating whether the complaint states a viable claim, the court construes the allegations of the complaint favorably to the pleader.  Scheuer, 416 U.S. at 236.  However, the court does not accept conclusory allegations or unwarranted deductions of fact as true.  Bell Atl. Corp., 550 U.S. at 555; Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).  In adjudicating a motion to dismiss, the court may consider the complaint and its proper attachments.  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).  The court may also consider documents attached to defendant's motion to dismiss, as long as those documents are referred to in the complaint and are central to plaintiff's claims.  Id. at 499.

## Analysis

Jurisdiction over a railroad employee's grievances with the railroad involving interpretation or application of a collective bargaining agreement is vested exclusively in the Board. 45 U.S.C. § 153 First. An exception occurs, however, when the employee has claims against the employer and against the union for breach of the union's duty of fair representation, in which case the employee may bring a "hybrid" action against both the union and the employer. Trial v. Atchison, Topeka & Santa Fe Ry. Co., 896 F.2d 120, 123 (5th Cir. 1990) (internal citations omitted).

The Supreme Court has held that the six-month limitations period found in section 10(b) of the National Labor Relations Act ("NLRA") applies to hybrid actions brought under that Act and under the Labor Management Relations Act ("LMRA"). DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169-172 (1983). The Fifth Circuit subsequently applied the six-month limitations period to hybrid actions brought pursuant to the Railway Labor Act ("RLA"). Trial, 896 F.2d at 124. "The limitations period under the RLA begins to run when the claimants discover, or in

the exercise of reasonable diligence should discover, the acts that form the basis of their duty of fair representation claim." Id. (internal citations omitted). On all of these principles the parties agree.

As to when limitations accrued in the instant case, BLET and UTU contend that plaintiff's claims accrued by at least 2006 or 2007, when plaintiff discovered or should have discovered the basis for his duty of fair representation claims due to the unions' alleged hostility to, and failure to assist or process, his claims. As a result of the unions' lack of assistance, plaintiff exercised his statutory right to pursue claims with the Board on his own, and did so prior to October 17, 2008.

Thus, the essence of the motions to dismiss is that at the latest, plaintiff knew or should have known at the time he filed his grievances with the Board of any breach by UTU or BLET of their duty of fair representation. Plaintiff filed the instant action on April 29, 2010; six months prior to that date is October 29, 2009. Because plaintiff's hybrid claims accrued by October 17, 2008, at the latest, the unions allege those claims are untimely.

Plaintiff does not appear to dispute defendants' assertions

concerning when his claims accrued. Instead, plaintiff contends that the limitations period was tolled during the time he exhausted his administrative remedies, and that he timely filed the complaint within six months of November 2, 2009, the date the Board denied his claims.

The Supreme Court has made clear that an employee can maintain a suit against a union for breach of the duty of fair representation whether or not the employee has exhausted administrative remedies against the employer under the RLA:

> And surely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts . . . . The claim against union defendants for breach of their duty of fair representation is a discrete claim quite apart from the right of the individual employees expressly extended to them under the Railway Labor Act to pursue their employer before the Adjustment Board.

Czosek v. O'Mara, 397 U.S. 25, 27-28 (1970) (internal citations and footnotes omitted). BLET and UTU argue that because plaintiff was not required to exhaust his claims with the Board prior to filing his hybrid claims against the union, filing claims with the Board failed to toll the limitations period. This is especially true considering that plaintiff's claims

before the Board pertained to actions by BNSF, rather than any actions of the unions.

In his response, plaintiff argues that pursuing internal grievances tolls the limitations period for filing a hybrid claim. While this statement is generally correct, plaintiff appears to confuse exhaustion of internal union grievance procedures with exhaustion of remedies before the Board. The former would toll the limitations period for filing a hybrid action, see Hayes v. Bhd. of Ry. & Airline Clerks, 727 F.2d 1383, 1385 (5th Cir. 1984); it appears the latter would not, and plaintiff has cited no authority to support such a proposition.[7]

The cases cited by plaintiff to support his tolling argument all concern situations where a claimant is pursing his internal grievances against the union, rather than filing claims with the Board. For example, plaintiff relies on McCall v. Southwest Airlines Co., No. 3:08-CV-2000-M, 2010 U.S. Dist. LEXIS 2522 (N.D. Tex. Jan. 12, 2010), for the proposition that "exhaustion of internal remedies is generally required before a plaintiff can

---

[7]Other courts that have addressed similar issues in cases arising under the NLRA and LMRA have concluded that filings with the National Labor Relations Board failed to toll the limitations period for filing a hybrid claim against the union for breach of the duty of fair representation. See, e.g., Arriaga-Zayas v. Int'l Ladies' Garment Worker's Union-Puerto Rico Council, 835 F.2d 11, 14 (1st Cir. 1987); Adkins v. Int'l Union of Elec., Radio & Mach. Workers, 769 F.2d 330, 335 (6th Cir. 1985); Aarsvold v. Greyhound Lines, 724 F.2d 72, 73 (8th Cir. 1983).

file a complaint in court alleging the union's breach of its duty to fairly represent him." Pl.'s Resp. in Opp'n to BLET Mot. to Dismiss at 3. Plaintiff similarly cites <u>Hayes</u>, 727 F.2d at 1385-86, for the proposition that "[I]t is an uncontested fact that **all time limits would have been preserved if [plaintiff] had chosen to pursue the internal union procedures."** <u>Id.</u> (emphasis and brackets in original). Plaintiff follows these cites by explaining that although BLET declined to pursue plaintiff's grievances, plaintiff proceeded to do so on his own by appealing to the Board, and he "then filed the instant lawsuit within six months of the Board's final decision on November 2, 2009." <u>Id.</u> Relying on these cases, plaintiff contends that limitations were tolled during the time his appeals were pending before the Board.

In his response to UTU's motion, plaintiff takes a slightly different approach by contending that the limitations period is tolled while plaintiff pursues "non-judicial remedies," citing <u>Lee v. Cytec Indus.</u>, 460 F.3d 673, 676 (5th Cir. 2006). Plaintiff misconstrues the court's use of the term "non-judicial remedies." The court in <u>Lee</u>, as in the other cases cited by plaintiff, considered tolling in the context of a claimant's pursuit of a union's internal grievance procedures, rather than tolling due to filing with the Board or National Labor Relations Board. Thus, the cases cited by plaintiff fail to support his

tolling argument.

Plaintiff does not allege, in the complaint or in either of his responses, that he attempted to pursue any internal union grievance procedures. Thus, it is apparent that plaintiff is relying on the filing of his claims with the Board to toll the limitations period, and that he is relying on the date the Board denied those claims to establish the date his hybrid claims against BLET and UTU accrued. Such is evident from the face of the complaint, wherein plaintiff alleges that he "has exhausted his administrative remedies" and is filing the complaint "within six months of the accrual of all claims on November 2, 2009, when the [Board] denied his grievances." Compl. at 4 ¶ 12. The court agrees with BLET and UTU, however, that appeals to the Board do not toll the limitations period for filing a hybrid claim for breach of the duty of fair representation. Accordingly, because plaintiff filed the instant action more than six months after he knew or should have known of the acts that form the basis of his duty of fair representation claim, his claims against BLET and UTU are untimely.

BLET also argued for dismissal of plaintiff's retaliation claim against it, and plaintiff conceded this point. Accordingly, the retaliation claim is dismissed as to BLET.

IV.

Order

Therefore,

The court ORDERS that the motions to dismiss filed by BLET and UTU be, and are hereby, granted, and that all claims and causes of action filed by plaintiff, Gary Epple, against BLET and UTU be, and are hereby, dismissed with prejudice.

The court further ORDERS that from this point forward the style of this action shall be modified as "Gary Epple, Plaintiff, v. BNSF Railway Company, Defendant," and that from this point forward the sole defendant shall be BNSF Railway Company.[8]

The court hereby determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

SIGNED September 15, 2010.

_____
JOHN McBRYDE
United States District Judge

---

[8]In its answer, BNSF Railway Company indicates it was incorrectly named in the caption of the complaint as "Burlington Northern and Santa Fe Railway."